**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                                                   Case No. 3:10-cr-155-J-34TEM

DAVID A. MYERS
_____

**ORDER**

This case is before the Court on Defendant David A. Myers' Motion To Suppress Evidence and Memorandum of Law (Doc. 22; Motion to Suppress), and the Government's Response to Defendant's Motion To Suppress. (Doc. 25; Response to Motion). The Motion to Suppress was referred to the Honorable Thomas E. Morris, United States Magistrate Judge, to conduct an evidentiary hearing and recommend an appropriate resolution. Accordingly, the Magistrate Judge conducted an evidentiary hearing on the Motion to Suppress on July 27, 2010. See Minute Entry (Doc. 28) and Transcript. (Doc. 29; Transcript).  On October 13, 2010, the Magistrate Judge entered a Report and Recommendation (Doc. 33)(Report) recommending that the Motion to Suppress be denied. See Doc. 33 at 13.  Thereafter, Defendant filed objections to the Report, see Defendant's Objection To Report And Recommendation (Doc. 36; Objections), and the Government responded. (Doc. 40; Response to Objections).  Thus, this matter is ripe for review.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).  If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo

review of those findings. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1).  However, the district court must review legal conclusions de novo. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at *1 (M.D. Fla. May 14, 2007).  Upon independent review of the file and for the reasons stated in the Magistrate Judge's Report, the Court will overrule the Defendant's Objections.  The Court will accept and adopt the legal and factual[1] conclusions recommended by the Magistrate Judge and supplement the legal conclusions where appropriate.

## I.   Background

In summary, the facts are set forth in the Affidavit for Search Warrant, (Doc. 25-1; Affidavit), as follows.  Officers with the Columbia County, Florida, Sheriff's Office were dispatched to respond to a report of an assault at 472 NW Rebel Place, Lake, City, Florida, at 10:16 a.m. on March 23, 2010.  The alleged victim of the reported assault advised Sheriff Deputy Sands (Sands) that Paul Schmitz (Schmitz) had threatened to kill him, and that Schmitz had acted as if he was concealing a handgun in his waistband.  The alleged victim told Sands that Schmitz had a "relationship" with his next door neighbors, Defendant David A. Myers (Myers) and Barbara Bowersox, who both resided at 432 NW Rebel Place.  Sands was unable to locate Schmitz in Schmitz's residence, but was advised by Bowersox, who was standing outside in her yard, that Schmitz was inside Myers' and Bowersox's mobile home

---

[1] In challenging the sufficiency of the Affidavit (Doc. 25-1; Affidavit) and Search Warrant (Doc. 25-2; Search Warrant), Defendant Myers does not rely on any additional evidence. Rather, he contends that the Affidavit is insufficient on its face to establish probable cause to support a search of Defendant's residence for evidence of cannabis and/or firearms and ammunition. Transcript at 38.

at 432 NW Rebel Place. Sands noted that there was a pathway between the Schmitz residence and the Myers residence. Sands made contact with Schmitz, and commenced an investigation. Determining that there was an outstanding warrant for the arrest of Schmitz, Sands placed Schmitz under arrest. Sands did not find a handgun on Schmitz's person.

Mrs. Schmitz arrived at the scene and gave written consent for law enforcement officers to search her residence at 458 Rebel Place NW. During the consent search of the Schmitz residence, Sands located an empty handgun holster in plain view on the counter top in the foyer, and firearm ammunition, a glass jar containing cannabis, a clear plastic bag containing cannabis, and other drug paraphernalia items located in a safe with an open door, also in the foyer area. Sands contacted the Multi-Jurisdictional Task Force (MJDTF) to continue the investigation.

Lake City Police Officer Mitchell Cline (Cline) and Sgt. Bunton, of the Drug Task Force, arrived on the scene at approximately 12:30 p.m., and spoke with Defendant Myers and Bowersox, who both gave their consent to search the rear room of their residence at 432 NW Rebel Place where Schmitz had been found. Bowersox advised the officers that Schmitz had been in the rear room but had exited the home through the front door, meaning that Schmitz had access to the entire residence before his arrest. The officers learned during this conversation with Myers and Bowersox that Myers was a convicted felon.

During the consent search for the firearm Schmitz was believed to have had in the rear room of Myers' residence, Bunton opened a white plastic trash bag and found two clear plastic bags that contained "cannabis seeds and residue." Bunton advised Myers of this finding and asked for consent to search the remainder of the residence. Defendant Myers

declined consent and advised that the officers would need to obtain a search warrant to search the rest of the mobile home. As such, the officers exited the residence to obtain a search warrant.

Cline prepared the Affidavit in support of the Search Warrant, outlining the facts as stated above. The Affidavit described the residence to be searched, "the items for which the search was requested, and the nexus between the location to be searched and the crime." Report at 5. Cline stated in the Affidavit that he had probable cause to believe that he would find in Myers' and Bowersox's residence: "CANNABIS, U.S. CURRENCY, AND/OR PARAPHERNALIA RELATING TO THE USE, POSSESSION, MANUFACTURING, AND/OR DISTRIBUTION OF CANNABIS AND/OR POSSESSION OF FIREARMS AND AMMUNITION." Affidavit at 3. The Affidavit specified that the items listed constitute evidence of a felony, "to wit: Fla. Stat. Sec. 893.13, Or Fla. Stat. 790" proscribing possession and/or distribution of illegal narcotics and "[p]ossession of firearm and ammunition by convicted felon, respectively." Affidavit at 3.[2] Based upon the Affidavit, state Circuit Judge Julian E. Collins found probable cause for the requested search warrant which he signed and issued that same day. The Search Warrant authorized a search for: CANNABIS, U.S. CURRENCY, AND/OR PARAPHERNALIA RELATING TO THE USE, POSSESSION, MANUFACTURING, AND/OR DISTRIBUTION OF CANNABIS AND/OR POSSESSION OF FIREARMS AND AMMUNITION. Search Warrant at 2.

By the time officers returned to search Myers' residence, Bowersox voluntarily

---

[2] Section 790.23, Florida Statutes, makes it unlawful, and a felony, for a person who has been convicted of a felony to own or have in his possession any firearm or ammunition.

removed from a safe a number of long-barrel firearms and "laid them out for the officers to see that she didn't have any handguns in there." Report at 6; Transcript at 26. Ultimately, in executing the Search Warrant, officers discovered five firearms and 52 rounds of ammunition. (Doc. 1; Indictment). On June 16, 2010, a grand jury returned a one count indictment charging Defendant Myers with knowingly possessing firearms and ammunition after having previously been convicted of a felony, in violation of 18 U.S.C. §§ 992(g)(1) and 924(a)(2). Indictment.

Defendant raises five objections to the Report recommending denial of Defendant's Motion to Suppress, one of which the Court addresses here.[3] Defendant challenges the sufficiency of the content of the Affidavit prepared in support of the Search Warrant to search his residence. Specifically, Defendant contends that the Affidavit is insufficient to support a finding that police had probable cause to believe that "the residence contained cannabis, US currency, and/or paraphernalia relating to the use, possession, manufacturing, and/or distribution of cannabis and/or possession of firearms and ammunition." Objections at 2. Defendant takes issue with the Magistrate Judge's conclusion that "[c]onsidering the totality of the circumstances, the affidavit was sufficient to establish probable cause as it set forth the link between Myers, his home and probable illegal activity." Objections at 2 (citing Report at 11 (citing United States v. Anderson, 152 F. App'x 915, 917 (11th Cir. 2005))).[4]

---

[3] Defendant's remaining objections are all subsumed by his overarching objection to the sufficiency of the Affidavit. Objections at 2-4.

[4] Defendant argues that "[c]ontraband found in a separate residence [Schmitz's residence] does not create probable cause for a search warrant to issue for the Myers's residence." Objections at 3.

**II.     The Affidavit Is Sufficient**

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Kapordelis, 569 F.3d 1291, 1310 (11th Cir. 2009)(quoting Illinois v Gates, 462 U.S. 213, 238 (1983)), cert. denied, 130 S.Ct. 1315 (2010). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002). "[T]he nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." United States v. Jenkins, 901 F.2d 1075 (11th Cir. 1990)(citation omitted).

Upon consideration of the record, the undersigned concludes that the Affidavit establishes a "fair probability" that evidence of cannabis or paraphernalia relating to the use or possession of cannabis, contrary to the provisions of Section 893.13, Florida Statutes,[5] would be located at Defendant's residence. Specifically, the Affidavit recites that police conducting a consent search of the rear room of Defendant's residence found "two clear plastic bags that contained cannabis seeds and residue" in the trash and household garbage

---

[5]  Section 893.13, Florida Statutes, prohibits a wide range of conduct relating to controlled substances, including Sections 893.13(2)(a) or (6)(a), which prohibit the purchase or possession of certain controlled substances, including cannabis.

6

bag located in that room. See United States v. Robinson, No. 08-60179-CR, 2008 WL 5381824, at *1 (S.D. Fla. Dec. 19, 2008)(affidavit recounting two instance where cocaine and marijuana residue were found in garbage bags left outside the residence, and Defendant's criminal history relating to drug possession and distribution provided sufficient evidence to constitute probable cause for search warrant to search Defendant's residence), adopted, 2009 WL 33307 (S.D. Fla. Jan. 6, 2009); State v. Colitto, 929 So.2d 654 (Fla. 4th DCA 2006)(anonymous "information" that defendant was trafficking in drugs and two "trash pulls" seven days apart in which officers found cannabis residue, seeds, and stems, along with mail addressed to residence, provided probable cause to issue warrant to search defendants' residence for drugs); State v. Carbonell, 816 So.2d 1169 (Fla. 4th DCA 2002)(officer's observation of "short term traffic" entering and leaving residence; people appearing to be smoking marijuana on the porch; and a single "trash pull" revealing the presence of marijuana and bags cut similar to officer's observations in other drug investigations rendered affidavit sufficient to establish probable cause supporting search warrant); State v. Mayes, 666 So.2d 165 (Fla. 2d DCA 1995)(officers' observation and "concerned citizen's report" of traffic to and from the home at all hours of the night and day, and cannabis stems, seeds, rolling paper and residue found in trash provided probable cause to support issuance of warrant for search of defendant's home).

Additionally, the totality of the circumstances set forth in the Affidavit supports the conclusion that there was a "fair probability" that a handgun believed to have been used by

Schmitz in a reported aggravated assault would be found in the Myers' residence.[6] As recounted by the Magistrate Judge, the Affidavit stated that the alleged victim of the reported aggravated assault believed that Schmitz may have been concealing a weapon at the time of the reported threat;[7] police found what appeared to be an empty handgun holster and firearm ammunition in Schmitz's residence during a consent search; and Schmitz was located in the Myers' residence shortly after the reported altercation, and at the time he was taken into custody, Schmitz did not have a firearm on his person. See Report at 10-11. The officers discussed with Myers and Bowersox the possibility of Schmitz's hiding a firearm inside their residence, and based on this discussion, both Myers and Bowersox gave the officers consent to search the rear room where Schmitz had just been. Affidavit at 4. No weapon was found. However, although Schmitz had been in the rear room, Bowersox acknowledged that he exited through the front door, thus having access to other parts of the house.

---

[6] Although not expressly stated, the Affidavit supports the conclusion that Schmitz, who had an "active warrant for his arrest" and who was indeed placed under arrest, was "also" a convicted felon, based upon the language of the Affidavit which after referring to Schmitz states that "Myers was also a convicted felon." Affidavit at 4 (emphasis added). Thus, the Affidavit supports a finding of probable cause to search the Myers' residence for a firearm left by Schmitz, relevant to the charge of unlawful possession of a firearm by convicted felon Schmitz. See United States v. Schmitz, Case No. 3:10-cr-156-J-34TEM (Doc. 41; Report and Recommendation at 21).

Additionally, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote a high level of deference traditionally given to magistrates in their probable cause determinations.'" United States v. Hatcher, 300 F. App'x 659, 663 (11th Cir. 2008)(quoting United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994)).

[7] Information provided by the victim of an alleged crime may be relied upon to support probable cause for the issuance of a search warrant. United States v. Johnson, 713 F.2d 654, 660 (11th Cir. 1983).

Although the Affidavit recognized that Myers was a convicted felon, it does not suggest officers sought to search Myers' residence to establish that Myers was unlawfully in the possession of a firearm.[8]  Rather, the search for the firearm in Myers' residence was supported by probable cause to believe that the handgun alleged to have been used by Schmitz in an aggravated assault was present on the premises of Myers' residence.[9]  Thus, there was a connection between both Myers and Schmitz and the residence to be searched, as well as a link between the residence and alleged criminal activity with regard to the handgun sought by law enforcement. See Martin, 297 F.3d at 1314; see also e.g., United States v. Propst, 369 F. App'x 42, 44 (11th Cir. 2010), cert. denied, 131 S.Ct. 640 (2010)(affirming denial of defendant's suppression motion based upon an affidavit which stated that police responded to a call that shots were fired in the area of defendant's apartment; that the defendant told the responding officer he had been shot in the hand; that after being shot, the defendant retrieved a gun from his apartment and fired several times at the person who shot him; and that the responding officer observed a trail of blood leading from the street to the door of defendant's apartment, all establishing "a connection between

---

[8]  Indeed, it is apparent that both Myers and Bowersox understood that the search was for evidence of drug use or distribution based on the finding of cannabis seeds and residue in the back room, and for Schmitz's alleged hand gun. As a result, Bowersox voluntarily displayed to the officers five rifles to establish that there were no handguns in the trailer. The fact that the officers ultimately found and seized other weapons allegedly unlawfully possessed by Myers during the search does not detract from the existence of probable cause. Officers may seize evidence of other crimes not described in the search warrant, encountered during the course and within the scope of a lawful search. United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997)(officers authorized to search for cocaine could seize a firearm found in the closet).

[9]  Alternatively, as noted in Note 6, supra, the search was also supported by probable cause to believe that Schmitz, a convicted felon, was in possession of a firearm which he had stashed in Myers' residence before his arrest.

9

Propst's apartment and criminal activity" sufficient to support probable cause to search defendant's apartment); United States v. Goodlow, No. 08-16250, 2010 WL 2977444, at *8 (11th Cir. July 29, 2010)(upholding a search pursuant to warrant of a "large scale" drug distributor's sister's trailer on the distributer's property where "there existed fair probability that contraband would be found in the mobile home").

### III.     Good Faith Exception to the Exclusionary Rule

Assuming arguendo that the Affidavit was insufficient to establish probable cause to search the Defendant's residence for cannabis and firearms, the good faith exception to the exclusionary rule applies, and the evidence seized pursuant to that Search Warrant is thus admissible.  In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court held that the good faith exception to the Exclusionary Rule "stands for the principle that courts should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." Martin, 297 F.3d at 1313.  The exception applies in all but four circumstances:

> (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role" . . . ; (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid."

Id. (quoting Leon, 468 U.S. at 923).  Whether these circumstances apply depends upon the

10

totality of the circumstances surrounding issuance of the warrant. United States v. Accardo, 749 F.2d 1477, 1481 (11th Cir. 1985).

Here, Defendant Myers has not submitted any evidence in support of any of these four circumstances. Indeed, the Court on review of the record, finds no basis to believe that the officers who contributed to the preparation of the Affidavit in support of the Search Warrant were dishonest, or reckless, or that they were objectively unreasonable in their belief in the existence of probable cause. See Martin, 297 F.3d at 1313.[10] Similarly, the Court finds no basis for a claim that the judge issuing the warrant abandoned his role, or that the warrant was so insufficient on its face that no reasonable officer could presume it to be valid. Id.

Additionally, after consideration of the totality of the circumstances, the undersigned finds that law enforcement reasonably believed probable cause existed to execute the search warrant issued by the judge.[11] Martin, 297 F.3d at 1318-20. Here, the officers had an objectively reasonable belief that they had probable cause to search Myers' residence for evidence of drug violations pursuant to a valid search warrant, based upon the cannabis seeds and cannabis residue lawfully discovered in the back room during a consent search, and to search Myers' residence for a handgun possibly left in the residence by Schmitz,

---

[10] In related case United States v. Schmitz, Case No. 3:10-cr-156-J-34TEM, the Magistrate Judge specifically concluded that the good faith exception to the exclusionary rule applied to an Affidavit prepared by the same officers and accepted by the same state court judge in support of a search warrant to search Schmitz's residence based upon nearly identical facts. See United States v. Schmitz, Case No. 3:10-cr-156-J-34TEM (Doc. 41; Report and Recommendation at 22–24)).

[11] Indeed, even if the Affidavit in support of the Search Warrant does not explicitly state that Schmitz was a convicted felon making his possession of a firearm unlawful, it is undisputed that the officers were aware of his status at the time they executed the Search Warrant. Martin, 297 F.3d at 1318-19 (recognizing that in determining whether a law enforcement officer reasonably relied on a search warrant, consideration of the totality of the circumstances can include consideration of facts known to the officers even if not included in the affidavit supporting issuance of the search warrant).

based upon the statement of the alleged assault victim; the discovery of an empty handgun holster and firearm ammunition in Schmitz's residence during a consent search; information from Myers and Bowersox that Schmitz had been in the Myers' residence following the alleged assault, and that at the time of his arrest, he did not have a weapon on his person, as well as the knowledge by law enforcement that Schmitz was a convicted felon. All of the events of this case took place on March 23, 2010, within a few hours. The Affidavit established a connection between both Myers and Schmitz, Schmitz and the residence located at 432 NW Rebel Place, and a link between the residence and possible criminal activity - the officers' belief that Schmitz stashed a handgun used in a reported assault; and Myers' possession of cannabis based upon the seeds and residue found in the residence during a consent search of the rear room.

In consideration of the foregoing, the Court concludes, based on the totality of the facts known to law enforcement, that execution of the Search Warrant was supported by a reasonable belief that probable cause existed. Martin, 297 F.3d at 1320. Indeed, nothing in this record suggests that a reasonable well-trained law enforcement officer would have believed the Search Warrant issued in these circumstances was illegal despite the judge's approval. Thus, even if this Court were to determine probable cause was actually lacking, the evidence obtained in the search would not be suppressed based upon the Leon good faith exception to the exclusionary rule.

Accordingly, it is hereby **ORDERED**:

1.     Defendant's Objections to Report and Recommendation (Doc. 36) are **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation (Doc. 33) is **ADOPTED AS SUPPLEMENTED HEREIN** as the opinion of the Court.

3. Defendant David A. Myers' Motion To Suppress Evidence and Memorandum of Law (Doc. 22) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 14th day of January, 2011.

MARCIA MORALES HOWARD
United States District Judge

lc12
Copies to:

Honorable Thomas E. Morris
United States Magistrate Judge

Counsel of Record